UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-23422-CIV-ALTONAGA/Reid

**JOSEPH COLE BARLETA**,

    Plaintiff,
v.

**BETTINA SCHEIN**,

    Defendant.
_____/

**ORDER**

**THIS CAUSE** came before the Court on Defendant, Bettina Schein's Motion for Final Summary Judgment [ECF No. 93], filed on July 21, 2025. Plaintiff, Joseph Cole Barleta filed a Response [ECF No. 96]; to which Defendant filed a Reply [ECF No. 97]. The Court has considered the record, the parties' submissions,[1] and applicable law. For the following reasons, the Motion is denied.

**I. BACKGROUND**

This action stems from alleged legal mis-advice Defendant provided to Plaintiff about entering into a consent agreement with the Securities and Exchange Commission ("SEC") before trial. (*See* Def.'s SOF ¶¶ 3–7; Pl.'s Resp. SOF ¶¶ 3–7 (all disputed on other grounds)).[2]

---

[1] The parties' factual submissions include Defendant's Statement of Material Facts [ECF No. 92] ("Def.'s SOF") and Plaintiff's Response to Defendant's SOF ("Pl.'s Resp. SOF") [ECF No. 95].

[2] While Plaintiff designates many facts as "disputed" in his Response Statement of Facts, his disputes are frivolous and unsupported. (*Compare* Def.'s SOF, *with* Pl.'s Resp. SOF). For example, Defendant details a string of indictments against Plaintiff, with citations to corresponding court documents. (*See* Def.'s SOF ¶¶ 17–18). Plaintiff marks these facts as disputed — but responds with conclusory and irrelevant comments, rather than record evidence contradicting Defendant's citations. (*See, e.g.*, Pl.'s Resp. SOF ¶ 18 ("Disputed . . . [e]ssentially, Cole was charged with more crimes than Al Capone was charged with[.] (alterations added))). Shame on Plaintiff's counsel for the hyperbole and unsupported attacks in the Response SOF. Nevertheless, the Court does not strike the filing because its defects do not alter the outcome of the Motion.

***The SEC Case and Consent Decree.*** On July 14, 2020, the SEC filed a civil complaint against Plaintiff, alleging seven violations of the Securities Exchange Act, including fraud and sales of unregistered securities. *See Sec. and Exch. Comm'n v. Complete Bus. Sols. Grp., Inc.*, No. 20-cv-81205 (S.D. Fla. 2025); (*see also* Def.'s SOF ¶¶ 1–2; Pl.'s Resp. SOF ¶¶ 1–2; *see also id.*, Ex. A, SEC Am. Compl. [ECF No. 95-1] ¶¶ 268–89). Plaintiff retained Defendant as his counsel to defend him against the allegations. (*See* Def.'s SOF ¶ 3; Pl.'s Resp. SOF ¶ 3 (disputed on other grounds)).

As trial approached, Defendant urged Plaintiff to sign a consent agreement (the "Consent Decree" or "Decree") — describing it as a "no admit – no deny" agreement that would not lead to liability under the Securities Exchange Act. (Second Am. Compl. ("SAC") [ECF No. 19], Ex. G., Email Chain [ECF No. 19-7] 5; *see also* Def.'s SOF ¶¶ 5–7, 10–11; Pl.'s Resp. SOF ¶¶ 5–7, 10–11 (all disputed on other grounds)).[3] Defendant warned Plaintiff that if he did not sign the agreement, the judge was inclined to grant summary judgment on at least one count — and trial would require significant additional fees and time because Plaintiff's co-defendants had already settled claims brought against them. (*See* Def.'s SOF ¶¶ 5–6, Pl.'s Resp. SOF ¶¶ 5–6 (all disputed on other grounds); Email Chain 5–6). In a November 28, 2021 email, she reiterated her advice and told Defendant that signing the Decree would resolve the case with "**no judgment and no finding of liability of any kind**" — whereas rejecting the agreement risked adverse findings that could lead to liability, higher disgorgement damages, and collateral suits. (Email Chain 1 (emphasis in original); *see also* Def.'s SOF ¶ 5; Pl.'s Resp. SOF ¶ 5 (disputed on other grounds); *id.* ¶ 7).

---

[3] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings. Citations to transcripts of court proceedings rely on the pagination and line numbering in the original document.

CASE NO. 23-23422-CIV-ALTONAGA/Reid

Plaintiff signed the Consent Decree later that day. (*See* Pl.'s Resp. SOF, Ex. B, Consent Decree [ECF No. 95-2] 7). By doing so, he waived the right to appeal, consented to entry of judgment and disgorgement, and deemed the allegations of the SEC Complaint true for the purpose of any disgorgement motion filed by the SEC in the civil lawsuit. (*See id.* ¶¶ 5, 7, 13; *see also* Def.'s Resp. SOF ¶¶ 8–11; Pl.'s Resp. SOF ¶¶ 8–11 (all disputed on other grounds); *id.* ¶ 6). The court approved the Consent Decree and entered a Final Judgment, ordering Defendant to pay disgorgement damages of $10,810,150.32 and a civil penalty of $1,330,000. *See generally SEC v. Complete Bus. Sol. Grp., et al.*, No. 20-cv-81205, J. of Perm. Inj. . . . [ECF No. 1018], filed Nov. 28, 2021 (S.D. Fla. 2021); *SEC v. Complete Bus. Sol. Grp., et al.*, Final J. [ECF No. 1434], filed Oct. 24, 2022; (*see also* Def.'s SOF ¶¶ 8, 12; Pl.'s Resp. SOF ¶¶ 8, 12 (both disputed on other grounds)). Plaintiff unsuccessfully challenged the Final Judgment on appeal to the Eleventh Circuit.. (*See* Def.'s SOF ¶¶ 13–14, 16; Pl.'s Resp. SOF. ¶¶ 13–14, 16).

***The Criminal Suits***. Following resolution of the SEC case, Plaintiff was indicted and pleaded guilty to RICO conspiracy with predicate acts of securities and wire fraud. *See generally United States v. Barleta*, No. 23-198-cr, Dkt. (E.D. Pa. 2025); (*see also* Def.'s SOF ¶¶ 22–28; Pl.'s Resp. SOF ¶¶ 22 (disputed on other grounds), 23, 24–25 (disputed on other grounds), 26, 27 (disputed on other grounds), 28). He was sentenced to 66 months in prison and ordered to pay $302,700,484.60 in restitution, jointly and severally with at least one co-defendant. (*See* Def.'s SOF ¶¶ 33–34; Pl.'s Resp. SOF ¶ 33 (disputed only to note the restitution payment was joint and several), 34; *see also* Def.'s SOF, Ex. 6, Transcript of Sentencing Hearing ("Sentencing Tr.") [ECF No. 92-6] 147:24–25 (stating the total restitution number is joint and several with another defendant)); *see also United States v. Barleta*, Criminal J. 9 [ECF No. 350] filed June 2, 2025

3

(stating one defendant as jointly and severally responsible with Plaintiff for the full amount and another jointly and severally responsible with Plaintiff for a partial amount).

At Plaintiff's change-of-plea hearing, the Government advised the court that the parties agreed "any payment [Plaintiff] makes in that SEC case, which we understand would ultimately be the [sic] benefit of the same pool of victims in our case, would be credited against any restitution in [the criminal] case." (Def.'s SOF ¶ 32 (alterations added; quotation marks and citation omitted); *see* Pl.'s Resp. SOF ¶ 32 (disputed on other grounds)). At Plaintiff's sentencing hearing, the court acknowledged part of the plea agreement — informing Plaintiff that "the money collected by the [SEC] in the Southern District of Florida" would be credited toward restitution in the criminal case. (Def.'s SOF ¶ 34 (alteration added; quotation marks omitted; quoting Sentencing Tr. 12:24–13:1); *see* Pl.'s Resp. SOF ¶ 34).

***Plaintiff's Claim and Defendant's Motion.*** In the SAC, Plaintiff raises a single claim of legal malpractice. (*See generally* SAC). He asserts that Defendant breached her duty of care by misrepresenting the effect of the Consent Decree — causing Plaintiff to sign the Decree rather than proceed to trial and to incur losses: the civil judgment of over 12 million dollars, a preliminary injunction freezing Plaintiff's accounts, and "a public record and order [in the civil case] holding that [Plaintiff] has admitted to all of the SEC's allegations[.]" (SAC ¶ 23 (alterations added); *see also id.* ¶¶ 12–18).

Defendant moves for final summary judgment, arguing the undisputed facts show Plaintiff cannot establish the elements of his claim, and the claim is barred by collateral estoppel and the doctrine of unclean hands. (*See generally* Mot.). Defendant denies any claim that her recommendation to Plaintiff to sign the Consent Decree fell below the standard of care and submits an affidavit from a standard-of-care expert. (*See* Mot. 6–9; *see also* Def.'s SOF, Ex. 7, Affidavit

of Burton W. Wiand ("Wiand Affidavit")).  Plaintiff did not submit an expert affidavit on the applicable standard of care.  (*See* Resp. 10–11).

## II.  LEGAL STANDARD

Summary judgment may be rendered if the pleadings, discovery and disclosure materials on file, and any affidavits show there is no genuine dispute of any material fact and the movant is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a), (c).  An issue of fact is "material" if it might affect the outcome of the case under the governing law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute of fact is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party.  *See id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).  The Court draws all reasonable inferences in favor of the party opposing summary judgment.  *See Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000) (citations omitted).

If the non-moving party bears the burden of proof at trial, the moving party may obtain summary judgment by: (1) establishing the nonexistence of a genuine issue of material fact as to any essential element of a non-moving party's claim and (2) showing there is insufficient evidence to support the non-moving party's case.  *See Blackhawk Yachting, LLC v. Tognum Am., Inc.*, No. 12-Civ-14209, 2015 WL 11176299, at *2 (S.D. Fla. June 30, 2015).  "Once the moving party discharges its initial burden, a non-moving party who bears the burden of proof must cite to . . . materials in the record or show that the materials cited do not establish the absence or presence of a genuine dispute." *Id*. (alteration added; quotation marks omitted; citing Fed. R. Civ. P. 56(c)(1)).

## III.  DISCUSSION

To succeed on a legal malpractice claim under Florida law,[4] a plaintiff must prove: (1) plaintiff employed the attorney; (2) the attorney breached her duty of care; and (3) the breach resulted in and was the proximate cause of loss to the client.  *See Kates v. Robinson*, 786 So. 2d 61, 64 (Fla. 4th DCA 2001) (citation omitted).  To satisfy the third element, a settlement giving rise to malpractice must have subjected the malpractice plaintiff to "greater liability than would have a verdict in a properly tried case." *Bill Branch Chevrolet, Inc. v. Philip L. Burnett, P.A.*, 555 So. 2d 455, 456 (Fla. 2d DCA 1990).  A plaintiff may not rely on speculation to prove the attorney's negligence was the proximate cause of loss to the client.  *See Proto v. Graham*, 788 So. 2d 393, 396 (Fla. 5th DCA 2001).

Defendant concedes that Plaintiff retained her for the SEC civil case and thus satisfies the first element of a legal malpractice claim but challenges his ability to prove the other two elements. (*See* Mot. 6).  The Court addresses Defendant's arguments regarding the remaining elements in turn, followed briefly by Defendant's argument that the doctrine of unclean hands entitles her to summary judgment.

### A.  Element Two: Neglect of Reasonable Duty[5]

*No Disputed Facts.*  Defendant argues that the undisputed facts concerning her communications with Plaintiff establish she did not neglect a reasonable duty of care by recommending he sign the Consent Decree.  (*See* Mot. 6–9).  Plaintiff asserts that Defendant's

---

[4] Florida law applies, requiring the Court to apply Florida's standard-of-care and expert-disclosure rules. (*See* Mot. 3–4; Resp. 2–3), *Littell v. Law Firm of Trinkle, Moody, Swanson, Byrd and Colton*, 345 F. App'x 415, 418 n.1 (11th Cir. 2009) (citation omitted).

[5] Defendant makes a cursory argument, without citing relevant authority, that Plaintiff is barred from asserting lack of consent or attorney misconduct because he failed to raise those issues in his appeal of the Consent Decree. (*See* Mot. 12–13).  The Court is unpersuaded and rejects the argument with equal brevity.

6

alleged misrepresentation about the effect of the Consent Decree — rather than her general recommendation to sign it — constitutes the breach. (*See generally* Resp.).

"An attorney breaches [her] duty to [her] client when the attorney's performance falls below the reasonable standard of care." *Inlet Condo. Ass'n v. Childress Duffy, Ltd.*, 615 F. App'x 533, 543 (11th Cir. 2015) (alterations added; citation omitted). Whether the attorney's conduct constitutes a breach is a question ordinarily reserved for the finder of fact. *See id.* (citation omitted). Such is the case here. While the parties agree on most of the facts concerning Defendant's conduct (*compare* Def.'s SOF, *with* Pl.'s Resp. SOF), reasonable minds could differ on whether that undisputed conduct met the standard of care, *see F.D.I.C. v. Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A.*, No. 11-cv-2831, 2013 WL 1092228, at *4 (M.D. Fla. Mar. 15, 2013).

**Failure to Disclose an Expert.** Defendant next argues that Plaintiff cannot establish a breach of duty because he failed to disclose a standard-of-care expert, and this omission requires summary judgment in her favor under Florida law. (*See* Mot. 9–12). Plaintiff sees it differently — arguing that a standard-of-care expert is not needed because a layperson can easily understand the alleged neglect using common sense. (*See* Resp. 10–11). While this is a close issue, the Court concludes that Plaintiff's failure to submit expert testimony does not foreclose his ability to prove a breach.

Florida law does not require expert testimony in all legal-malpractice cases. *See Allen v. Lyons & Farrar P.A.*, No. 19-cv-758, 2022 WL 11625752, at *5 (N.D. Fla. Sept. 21, 2022) (citing *Evans v. McDonald*, 313 F. App'x 256, 258 (11th Cir. 2009); other citations omitted). A legal-malpractice plaintiff "'*must* present expert testimony to establish the appropriate standard of care (and breach thereof) *unless* the lawyer's lack of care and skill is so obvious' that the factfinder

7

'can resolve the issue as a matter of common knowledge.'" *Id.* (emphases in original; quoting *Evans*, 313 F. App'x at 258). Thus, when a jury cannot use common sense to determine the skills and methods recognized as necessary and customarily followed in the professional community, expert testimony is required. *See AECOM Tech. Servs., Inc. v. Pro. Servs. Indus., Inc.*, 580 F. Supp. 3d 1176, 1198 (M.D. Fla. 2021) (citations omitted)). But when the public can use common sense to discern whether a particular act or omission constitutes a breach, an expert is not needed. *See Hilson v. GEICO Gen. Ins. Co.*, No. 11-cv-13, 2014 WL 11430971, at *3 (M.D. Fla. May 21, 2014) (citation omitted).

Courts applying these rules have distinguished cases where expert testimony is required from those where common sense suffices based on the nature of the alleged breach. *See, e.g.*, *Evans*, 313 F. App'x at 258 (citations omitted). For instance, courts have found expert testimony was not necessary to explain the standard of care in malpractice suits involving allegations that (1) an attorney failed to file a notice of appearance; (2) an attorney instructed his client to act in opposition to a judge's orders despite threat of dismissal; and (3) an attorney inexplicably failed to file a lawsuit within the statute of limitations. *See id.* (citations omitted). By contrast, courts generally require expert testimony in cases concerning the reasonableness of legal strategy. *See, e.g.*, *Itri v. Jones Foster P.A.*, No. 23-cv-81384, 2024 WL 3949411, at *1–2 (S.D. Fla. Aug. 27, 2024) (citation omitted).

Defendant frames the malpractice claim as a challenge to her legal strategy. (*See, e.g.*, Mot. 8–9). But Plaintiff's theory of breach rests not on strategy, but on Defendant's alleged misrepresentation that the Decree imposed "no judgment and no finding of liability of any kind." (SAC ¶ 17). Defendant fails to persuade that whether her assurance fell below the standard of care is a question a jury cannot answer without a testifying expert. *See Evans*, 313 F. App'x at 258

8

(citations omitted); *cf. Sommers v. McKinney*, 670 A.2d 99, 105 (N.J. Super. Ct. App. Div. 1996) (finding no expert needed under New Jersey's similar common-knowledge rule where attorney failed to report settlement discussions accurately or recommend disposition based on each party's actual position). Consequently, Plaintiff's failure to timely submit a standard-of-care expert does not foreclose his ability to attempt to prove a breach at trial.

### B.  Element Three: Causation

***Collateral Estoppel.***  To prove causation, Plaintiff must demonstrate he is worse off for having signed the Consent Decree than he would have been had he proceeded to trial in the SEC action. (*See* Feb. 8, 2024 Order [ECF No. 63] 3–4 (citations omitted)). This requires Plaintiff to put on a "case within a case" and contest his liability in the SEC action. (*Id.* 3 (quotation marks and citation omitted)). Defendant argues Plaintiff's guilty plea in the criminal case collaterally estops him from doing so. (*See* Mot. 13–18). Plaintiff contends the criminal case and the SEC action were separate proceedings involving different conduct. (*See* Resp. 4–8).

Collateral estoppel forecloses re-litigation of an issue of fact or law that has been litigated and decided in a prior suit if (1) the issues at stake are identical to the ones involved in the prior litigation; (2) the issues were litigated in the prior suit; (3) the determination of the issue in the prior litigation was critical and necessary to the judgment in the action; and (4) the party against whom the earlier decision is asserted received a fair and full opportunity to litigate the issue. *See I.A. Durbin, Inc. v. Jefferson Nat'l Bank*, 793 F.2d 1541, 1549 (11th Cir. 1986) (citations omitted); *see also CSX Transp., Inc. v. Bhd. of Maint. of Way Emps.*, 327 F.3d 1309, 1317 (11th Cir. 2003) (explaining that federal issue-preclusion rules apply in assessing the preclusive effect of a federal judgment where the court exercised federal-question jurisdiction (citations omitted)).

Defendant does not show the first requirement is satisfied. (*See* Mot. 13–18). In the

9

criminal proceeding, Plaintiff pleaded guilty to conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO") under 18 U.S.C. section 1962(d), with predicate crimes of securities fraud and wire fraud. (*See* Def.'s SOF, Ex. 2, Guilty Plea Agreement [ECF No. 92-2]). To prove a RICO conspiracy, the government need only show that a defendant either agreed to the conspiracy's overall objective or agreed to commit two predicate acts. *See Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1293 (11th Cir. 2010) (citation omitted).

The Judgment in the SEC action hinged on Plaintiff's admissions — for purposes of that Judgment — to multiple direct violations of the Securities and Exchange Act (the "Act"). (*See generally* SEC Am. Compl. (detailing counts for fraud in violation of section 10(b) of the Act, 15 U.S.C. § 78j(b), and Rule 10b-5(b)–(c), 17 C.F.R. §§ 240.10b-5(b)–(c); fraud in the offer or sale of securities in violation of sections 17(a)(1)–(3) of the Act, 15 U.S.C. §§ 77q(a)(1)–(3); and sale of unregistered securities in violation of sections 5(a) and 5(c) of the Act, 15 U.S.C. §§ 77e(a), 77e(c))). Again, Plaintiff's malpractice suit involves a "case within a case," requiring him to demonstrate he is worse off because of signing the Consent Decree at Defendant's instruction instead of proceeding to trial in the civil action. (*See* Feb. 8, 2024 Order 3 (citations omitted)).

The court in the SEC action based its damages determination on Plaintiff's admission to *all* of the SEC's allegations for purposes of Judgment. *See* J. of Perm. Inj. 5. Thus, the issues relevant to Plaintiff's "case within a case" that he must prove to be successful on his malpractice claim here will likely include whether he is liable on *each count* of the SEC's Amended Complaint. And Defendant has not shown the conduct required to prove those counts is identical to the conduct admitted in the criminal case.

For example, to prove a violation of section 5(a) or 5(c) of the Securities Act, "the SEC must demonstrate (1) the defendant directly or indirectly sold or offered to sell securities; (2)

through the use of interstate transportation or communication and the mails; (3) when no registration statement was in effect." *SEC v. Big Apple Consulting USA, Inc.*, 783 F.3d 786, 806–07 (11th Cir. 2015) (quotation marks and citation omitted). In the criminal case, Defendant admitted to factual allegations contained in a memorandum prepared by the Government. (*See* Def.'s SOF, Ex. 3, Change of Plea Hearing Tr. [ECF No. 92-3] 38:13–22; *see also* Def.'s SOF, Ex. 4, Government's Change of Plea Mem. ("Gov.'s Mem.") [ECF No. 92-4] 5–11). Those factual allegations do not resolve whether the relevant securities lacked registration statements, nor would such factual allegations be critical and necessary to that criminal Judgment. (*See* Gov.'s Mem. 5–11). The Plea Agreement similarly does not mention registration statements. (*See generally* Plea Agreement).

Defendant does not address this omission in her briefing. (*See generally* Mot.; Reply). In fact, she appears to recognize the difference between the SEC case and the criminal case, asserting only that the crime Plaintiff pleaded guilty to "is identical to — and the criminal equivalent of — a violation of civil violation of 10(b) of the Exchange Act[,]" while omitting reference to any of the other counts in the SEC's Amended Complaint. (Mot. 14 (alteration added)). Consequently, the Court does not find summary judgment based on collateral estoppel appropriate.

***No Loss.*** Defendant next argues that Plaintiff cannot prove he suffered any loss because of her alleged negligence because the "disgorgement" he owes to the SEC in the civil case will be credited toward the $302,700,484.60 in restitution he owes in the criminal case. (Mot. 18). Plaintiff insists the restitution ordered in the criminal case does not "reflect any specific allocation" as to [Plaintiff,]" making any set-off "speculative[.]" (Resp. 9 (alterations added)). Given the joint and several nature of the criminal restitution, the Court agrees it cannot enter summary

judgment on this basis.

To prove his case of legal malpractice, Plaintiff must demonstrate he incurred damages that he would have avoided but for Defendant's alleged negligence. *See Sure Snap Corp. v. Baena*, 705 So. 2d 46, 49 (Fla. 3d DCA 1997) (citations omitted). These damages must be measurable, not speculative. *See Zinn v. United States*, 835 F. Supp. 2d 1280, 1328 (S.D. Fla. 2011) (citations omitted). As proof he incurred damages, Plaintiff points to the "12 million" dollar judgment against him in the SEC action. (Am. Compl. ¶ 23).

Defendant argues that Plaintiff cannot prove these damages because the criminal court agreed to apply at least part of them — the civil disgorgement damages — toward the $302,700,484.60 Plaintiff owes in restitution. (*See* Mot. 18). Given that credit, Defendant argues, the civil Judgment does not add to the total amount Plaintiff must pay in penalties, and he cannot trace any measurable damages to Defendant's alleged negligence in the SEC action. (*See id.*).

As noted, Plaintiff's damages in the civil action include disgorgement damages of $10,810,150.32 and a civil penalty of $1,330,000. Thus, even if Plaintiff is correct that the *disgorgement* damages could be set off from Plaintiff's criminal restitution, Plaintiff would still owe over $1 million in civil penalties. The record evidence does not resolve — nor does Defendant address — whether the criminal court agreed that any set-off would include the civil penalty. (*See* Def.'s SOF ¶¶ 32, 34; Pl.'s Resp. SOF ¶¶ 32 (disputed on other grounds), 34). Further, Plaintiff's criminal restitution is joint and several with other defendants who participated in the conspiracy (*see* Sentencing Tr. 151; *see also* Criminal J. 9): one defendant is liable with Plaintiff for the total amount, while another defendant shares a partial amount, *see United States v. Anthony*, No. 302-004-cr, 2008 WL 1815808, at * 1 n.2 (S.D. Ga. Apr. 22, 2008). Defendant's failure to address this issue or explain how Plaintiff fails to present a genuine issue of material fact regarding causation

12

damages precludes her from obtaining summary judgment on this ground.

### C. Unclean Hands

Finally, Defendant advances an equitable theory: that because Plaintiff admitted liability to RICO violations in his criminal case, the doctrine of unclean hands bars him from profiting from his own fraud through this malpractice action. (*See* Mot. 19–20). This argument fails to persuade. As discussed, Plaintiff's guilty plea does not definitively settle whether he committed all the misconduct he was accused of in the SEC civil action.

### IV. CONCLUSION

Accordingly, it is

**ORDERED AND ADJUDGED** that Defendant, Bettina Schein's Motion for Final Summary Judgment **[ECF No. 93]** is **DENIED**.

**DONE AND ORDERED** in Miami, Florida, this 22nd day of September, 2025.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc: counsel of record